UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FRANK RUKSZNIS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00263-DBH |
| | ) |
| ARGONAUT INSURANCE COMPANY, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Plaintiff Frank Ruksznis obtained judgment in the amount of $100,000 in a slander and civil rights action against Lance Burgess, a former selectman of the Town of Sangerville. Ruksznis v. Burgess, No. 1:11-cv-00350-DBH: ECF No. 15.  In the present action against Defendant Argonaut Insurance Company, Ruksznis seeks to reach and apply insurance money pursuant to 24-A M.R.S. § 2904.  The issue of the availability of insurance is currently before the Court on cross-motions for summary judgment.  The Court referred the matter for report and recommended decision.  For reasons that follow, I recommend that the Court grant summary judgment in favor of Argonaut Insurance Company.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in her favor. Hannon v. Beard, 645 F.3d 45, 47-48 (1st Cir. 2011).  If the Court's review of the record reveals evidence sufficient to support a judgment in favor of the non-moving party on one or more of his

claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."). Cross motions for summary judgment do not alter the Rule 56 standard. Nor do they require the granting of either motion. Wiley v. Am. Greetings Corp., 762 F.2d 139, 141 (1st Cir. 1985). "Cross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Id.

## FACTS

Argonaut issued policy MGL 700045001, naming as insured the Town of Sangerville, with a stated policy period from April 17, 2009, to April 17, 2010 ("the CGL[1] policy"). The CGL policy was in full force and effect during its stated policy period, April 17, 2009, to April 17, 2010. In addition to the CGL policy, Argonaut issued to the Town of Sangerville policy MPO 700045002, with a stated policy period from April 17, 2010, to April 17, 2011 ("the POL[2] policy"). The POL policy was in full force and effect during its stated policy period, April 17, 2010, to April 17, 2011. Prior to the events giving rise to this litigation, the Town of Sangerville did not have employment practices liability insurance coverage. (Def.'s Statement ¶¶ 1-7.)[3] The provisions of the CGL policy and the POL policy are set forth in the discussion.

*The Underlying Action*

On September 15, 2011, Frank Ruksznis commenced a legal action against Lance Burgess in this Court, case number 1:11-cv-00350-DBH. Prior to the commencement of that

---

[1] Commercial General Liability.
[2] Professional Liability, Public Officials Liability Part.
[3] Ruksznis had admitted all sixteen of Argonaut's statements of fact.

2

action, Ruksznis was the appointed[4] plumbing inspector for the Town of Sangerville and Burgess was a selectman on the Board of Selectmen for the Town of Sangerville.  Pursuant to Fed. R. Civ. P. 68, Burgess filed an Offer of Judgment in the Burgess action on June 18, 2012.  Ruksznis accepted and the Court entered judgment in the Burgess action for Ruksznis and against Burgess in the amount of $100,000.  (Def.'s Statement ¶¶ 8, 11-15.)  Copies of the underlying complaint, answer, offer of judgment, and judgment are attached to Argonaut's statement.  (Id. ¶¶ 9, 10, 16; see ECF Nos. 17-5 (am. compl.), 17-6 (answer), 17-7 (offer of judgment), 17-8 (judgment).)

In the underlying action against Burgess, Ruksznis asserted four counts, one count of common law slander and three due process counts under 42 U.S.C. § 1983.  The slander claim was that Burgess, on April 13, 2010, stated that Ruksznis had made "less than quality decisions" as plumbing inspector.  Additionally, Burgess said, "There has [sic] been a couple of issues concerning both his job performance and actions outside of work.  I can't comment on what happened last year because I wasn't on the Board and I believe the Selectmen discussed it in executive session."  Ruksznis alleged that the words spoken by Burgess "concerned Plaintiff's occupation and professional station and thus constituted slander per se."  Ruksznis alleged he was "damaged economically and in spirit."  (Additional Statements ¶¶ 26-27.)

As for due process, Ruksznis alleged that on April 22, 2010, at a Sangerville Selectman's meeting, Burgess, "without actual legal authority, notice, hearing or cause," and "acting under color of law," caused Ruksznis to be removed as plumbing inspector "in violation of state and federal law."  Thereafter, on May 11, 2010, Burgess blocked Ruksznis's reinstatement as plumbing inspector for the Town of Sangerville although Burgess had been informed by the Maine Municipal Association that the removal of Ruksznis as plumbing inspector on April 22,

---

[4] See 30-A M.R.S. § 4221(1) (providing for the appointment of plumbing inspectors, compensation as determined by municipal officers, payment for services by the respective municipalities, and removal from office for cause).

2010, was effectuated in violation of State law. Ruksznis alleged a property right in his plumbing inspector position and a "justifiable, reasonable expectation of reappointment." He complained of being "injured financially and in spirit" and sought compensatory damages from Burgess. Based on these core allegations, he asserted a substantive due process claim (count II), a procedural due process claim (count III), and a due process claim premised on the combined loss of both his position and his liberty interest in his professional reputation (count IV). (Additional Statement ¶¶ 28-36.)

*Ruksznis's Independent Contractor Status*

Ten of Ruksznis's additional statements set forth facts meant to support a finding that he was an independent contractor during his term of office as Sangerville's plumbing inspector, rather than a municipal employee. Argonaut requests that eight statements be stricken. Should the request to strike be overruled, Argonaut admits all eight statements. The first undisputed fact is that Ruksznis provided his own tools, paid for all of his own expenses, scheduled when he would perform inspections, and paid for any schooling to update his license. The second undisputed fact is that Burgess admitted in his answer to the underlying complaint that Ruksznis was an independent contractor. (Additional Statement ¶¶ 22, 37.)

I overrule Argonaut's objection to the remaining eight facts related to independent contractor status, though I do not ultimately find that these facts are material to the outcome of the pending motions.[5] The disputed additional facts relate that Ruksznis was the plumbing

---

[5] The basis for the request to strike is not materiality, but rather that the statements are supported by Ruksznis's affidavit. According to Argonaut, it is exclusively the allegations in the underlying complaint that control in a reach and apply action. (Response to Pl.'s Statement of Additional Facts at 1, ECF No. 27.) This is partly true. See Sarah G. v. Me. Bonding & Cas. Co., 2005 ME 13, ¶ 7, 866 A.2d 835, 838 ("Unless the allegations of the claims upon which the underlying judgment are based establish liability covered by the policy, the insurer is not liable in a reach and apply action."); Korhonen v. Allstate Ins. Co., 2003 ME 77, ¶ 11, 827 A.2d 833, 837 ("[T]he underlying complaint from which the judgment emanates is examined to determine whether there is any allegation that, if proven, would establish liability within the coverage of the . . . policy."). However, if the allegations in the underlying action suggest there is a legal claim that could be covered under a policy, then the reach

inspector for the Town of Guilford, Abbot, Atkinson, Blanchard, Sangerville, Dover-Foxcroft, Monson, Dexter, and Willimantic; that 75% of all plumbing permit fees paid to any of the towns was paid to Ruksznis in compensation for his services; that Ruksznis determined when he would perform an inspection and how long that inspection would take; that he received no direction from any town manager before he performed any plumbing inspections; that he would be aware of a job that needed inspection when contacted by either the plumber or the septic system installer; that he always performed every plumbing inspection on his own, though he was not barred from bringing an assistant; that he controlled how detailed his inspection was and only potentially has contact from the town manager if the town manager has received a complaint about his performance; that he never kept track of his time and was paid by the job; and that he was regularly engaged in the business of plumbing inspection. (Statement of Additional Facts, ¶¶ 17-21, 23-25.)

## DISCUSSION

**A.    Rules of Construction**

The language of an insurance contract is construed according to its plain meaning, except where the language is ambiguous. Travelers Indem. Co. v. Bryant, 2012 ME 38, ¶ 9, 38 A.23d 1267, 1269. Language is ambiguous if it allows different reasonable interpretations or if an ordinary person would not understand that the policy did not afford coverage for the kind of claim at issue. Id. at 1270. Whether two or more reasonable interpretations exist is a question of law for the court to resolve. Acadia Ins. Co. v. Keiser Indus., 2002 ME 57, ¶ 15, 793 A.2d 495, 498. To consider the reasonableness of a proposed reading, the Court evaluates the insurance

---

and apply action is viable and presents a trial-worthy claim that can be supported with evidence beyond the pleadings. Korhonen, 2003 ME 77, ¶¶ 17, 19, 827 A.2d at 839. Although I do not strike these factual statements, I conclude that there is no viable reach and apply claim that would be supported by a finding of independent contractor status.

contract as a whole and endeavors to achieve the intention of the parties.  Found. for Blood Research v. St. Paul Marine & Fire Inc. Co., 1999 ME 87, ¶ 11, 730 A.2d 175, 180.  "When applying these rules of construction, [courts] view the language from the perspective of an average person, untrained in either the law or insurance."  Id.  Ambiguity, if found, is resolved in favor of the insured.  Particularly where exclusions or exceptions from coverage are at issue, the rule is to construe ambiguous language "strictly against the insurer" because such provisions have a "disfavored" status.  Foremost Ins. Co. v. Levesque, 2005 ME 34, ¶ 7, 868 A.2d 244, 246.

**B.    The CGL Policy**

Ruksznis's claim to reach and apply insurance money under the CGL policy is based on his slander judgment against Burgess, which he says is insured under the policy's coverage B, "personal and advertising injury" coverage.  (Id. ¶¶ 38-40.)  Argonaut concedes for purposes of summary judgment that Burgess was an insured under the CGL policy and that Ruksznis's slander judgment against Burgess falls within the definition of "personal or advertising injury." (Additional Statement ¶ 39;  Def.'s Motion at 14.)  The personal or advertising injury coverage reads as follows:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1.  Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  . . .

(PageID # 89.)

> AMENDED DEFINITION—PERSONAL AND ADVERTISING INJURY
>
> "Personal and advertising injury" means injury, including:
>
> (i) Mental anguish;
> (ii) Humiliation; and

6

>> (iii) Emotional distress;
>
> caused by one or more of the following offenses:
> . . .
> d. Electronic, oral, written or other publication of material that:
> (1) slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; . . . .

(PageID # 17-2.)

The dispute concerns whether certain exclusions negate coverage for the slander liability. Argonaut says coverage is excluded by the policy's "Employment-Related Practices Exclusion" and by its "Governmental Errors and Omissions Exclusion." (Def.'s Motion at 9.) These provisions are discussed in turn.

### 1. The Governmental Errors and Omissions Exclusion

An endorsement to the CGL policy excludes coverage for "governmental errors and omissions."

> EXCLUSION—GOVERNMENTAL ERRORS AND OMISSIONS
>
> A. The following exclusion is added to . . . Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:
>
> This insurance does not apply to any liability arising out of any actual or alleged act, error, omission, misstatement, neglect or violation of any federal or state civil rights laws, or breach of duty, including misfeasance, malfeasance, or nonfeasance, by any insured in the discharge of their duties for the Public Entity, individually or collectively.

(PageID # 127.)

Ruksznis concedes that the section 1983 civil rights judgment is excluded by the governmental errors and omissions exclusion. (Pl.'s Response and Cross-Motion at 13.) The parties disagree whether the slander liability succumbs to this exclusion. Argonaut maintains that the allegations against Burgess sweep together slanderous statements and Burgess's efforts to remove Ruksznis from his position. (Id. at 19.) In this light, Argonaut asserts that Burgess

7

acted in connection with discharging his duties to the Town of Sangerville, bringing the liability within the exclusion. (Def.'s Reply at 6.) Ruksznis responds that the exclusion only applies to civil rights violations and breaches of public duties. (Pl.'s Response and Cross-Motion at 14.) Ruksznis argues that if the exclusion is read to apply to his slander judgment, then the policy's express coverage for slander is rendered illusory. (Id. at 15.)

  The language of the exclusion is very broad. It excludes coverage for "any liability arising out of" a list of alternative activities engaged in "by any insured" (and it is undisputed that Burgess was an insured) "in the discharge of their duties for the Public Entity, individually or collectively." The exception turns on whether the insured was discharging a duty for the public entity. If the exception applies to the circumstances alleged in the underlying action against Burgess, it does so because the allegations establish that Burgess was a selectperson when he made the slanderous statements. On the other hand, it is not plain that Burgess discharged any duty to Sangerville by defaming Ruksznis in public session. Moreover, if every false and defamatory statement by a selectperson (or other municipal officer) is treated as a governmental error or omission so long as it has something to do with a municipal concern, then it is difficult to conceive of a situation in which the exclusion would not apply, effectively allowing the exclusion to swallow the otherwise clear provision of coverage for slander.

  Case law addressing the scope of "governmental errors and omissions" exclusions is difficult to find. Presumably this language is meant to carve out an atypical risk in insuring public entities that is not present when a CGL policy is issued to a private entity; a kind of risk distinct from typical tort injury, because tort liability is the traditional liability that CGL policies are designed to cover. See Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67-68 (1st Cir. 2012) (describing the purpose of CGL policies as "to indemnify a party against tort and not

8

contract-based liability"). Although *governmental* errors and omissions exclusions have not been the focus of any cases I have found, generic errors and omissions (E & O) coverage, or exclusions, have been. According to the First Circuit Court of Appeals, "An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business." Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 74 (1st Cir. 2007). This governing principle comports with the "errors and omissions" title of this exclusion. As discussed below, the POL policy affords errors and omissions coverage separately under its "wrongful act" coverage. However, that coverage expressly excludes any claim of defamation, whereas the CGL policy expressly extends coverage to claims of defamation.

 Applying the CGL policy's Errors and Omissions Exclusion to a claim of slander that is expressly covered in a primary coverage provision is not a particularly satisfying exercise, I must say. Based on the character of the "errors and omissions" term of art in the insurance context, I would be inclined to construe the exclusion to apply to mistakes and not to tortious acts performed with a greater degree of fault. Because slander can be committed by fault greater than negligence, Morgand v. Kooistra, 2008 ME 26, ¶ 26, 941 A.2d 447, 455, I believe this exclusion sets up a potential factual dispute and does not provide a solid basis for awarding either party summary judgment. Regardless of my own inclination, however, I do not offer the Court a recommendation on this score because the Employment-Related Practices Exclusion, discussed next, unambiguously excludes coverage given the facts that underlie Ruksznis's slander judgment against Burgess.

   3. **The Employment-Related Practices Exclusion**

 The CGL policy excludes coverage for "employment-related practices."

    EMPLOYMENT-RELATED PRACTICES EXCLUSION

> B. The following exclusion is added to Paragraph 2., Exclusions of Section I — Coverage B — Personal And Advertising Injury Liability:
>
> This insurance does not apply to:
>
> "Personal and advertising injury" to:
>
> (1) A person arising out of any:
>
> (a) Refusal to employ that person;
> (b) Termination of that person's employment; or
> (c) <u>Employment-related practices, policies, acts</u> or omissions, <u>such as</u> coercion, demotion, evaluation, reassignment, discipline, <u>defamation</u>, harassment, humiliation, discrimination or malicious prosecution directed at that person; . . . .
>
> (2) . . . .
>
> This exclusion applies:
>
> (1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;
>
> (2) Whether the insured may be liable as an employer or in any other capacity; and
>
> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(PageID # 112 (emphasis added).)

    Argonaut maintains that the slander coverage is negated by the employment-related exclusion. (Def.'s Motion at 14-15.) Ruksznis says otherwise. According to him, the harm Burgess inflicted on him did not pertain to "employment" because he was an independent contractor, or officer, not a municipal "employee." (Pl.'s Response and Cross-Motion at 3, *passim*.) In Ruksznis's view, "The core issue is whether [he] meets the eight-part test for

whether one is an employee or an independent contractor first enunciated by the Law Court in Murray's Case, 130 Me. 181, 186, 154 A. 352, 354 (1931)." (Id. at 3.)

The language under the microscope is the language of subsection (B)(1)(c) of the Employment Related Practices Exclusion, which excludes coverage for "[e]mployment-related practices, policies, acts or omissions," expressly including "defamation." Slander, of course, is defamation. The term that Ruksznis says is ambiguous, however, is "employment-related." According to Ruksznis, "employment-related" only means "employee-employment-related" and does not include the kind of relationship he had with the Town of Sangerville because he was an "independent contractor" rather than a municipal "employee." In his view, if he was an independent contractor then "there was no underlying employment relationship." (Pl.'s Response and Cross-Motion at 5.)

Ruksznis's proposed construction of the term employment is not reasonable. An ordinary person would understand the language of the employment-related exclusion to exclude coverage for defamation claims arising out of employment. An ordinary person would also consider the term employment to cover Ruksznis's relationship with the Town of Sangerville because he was, in fact, employed in the work of plumbing inspector for the Town. The American Heritage Dictionary defines employment as: "1a. The act of employing. b. The state of being employed. 2. The work in which one is engaged; occupation. . . ." American Heritage Dictionary at 586 (4th ed. 2000). It defines employ as: "1a. To engage the services of; put to work . . . ." Id.

Ruksznis's argument that the word "employment" does not encompass the work he performed as a plumbing inspector is based on a legalistic argument that someone engaged as an independent contractor is not an "employee" and, therefore, is not employed. (Pl.'s Response and Cross-Motion at 5.) However, even if the Court assumes, for the sake of argument, that

11

Ruksznis's work as a municipal plumbing inspector placed him in the status of independent contractor, he was nonetheless employed in the occupation of plumbing inspector. Ruksznis was engaged by the Town of Sangerville on specified terms by means of appointment. This constituted employment as that term is ordinarily understood. The law requires the Court to apply the ordinary meaning of the words used in the policy, not to rewrite the agreement based on a common law distinction developed for purposes of workers compensation law or wage and hour law. Although the ordinary person unschooled in the law or in insurance appreciates that there is a distinction between being an employee and an independent contractor, the ordinary person also appreciates that either status is a form of employment.

In a surreply memorandum, Ruksznis argues that the policy language incorporates the employee concept because it references, as examples of excluded claims, claims arising from demotion, evaluation, reassignment, discipline, which sound like the sorts of things experienced by employees rather than contractors. (Pl.'s Surreply at 3, ECF No. 37.) These are but examples. Moreover, a contractor certainly can be evaluated and might well be reassigned within a project. Moreover, other examples include coercion, harassment, humiliation, discrimination, malicious prosecution, and, most importantly, defamation. All of these other examples could as readily apply to a contractor as to an employee.

The ordinary meaning of employment gathers up the work of a municipal plumbing inspector because such a person is engaged by the municipality in this occupation and is so employed in the position when he performs those duties. Burgess's slander concerning Ruksznis's performance of his plumbing inspector office was, unambiguously and as a matter of law, an employment-related liability subject to the employment-related practices exclusion.

C.     **The POL Policy**

Ruksznis says coverage exists for his civil rights claims under the POL policy's "wrongful act" coverage provision. (Additional Statement ¶¶ 41-42.) Argonaut concedes for purposes of summary judgment that Burgess was an insured under the POL policy and that Ruksznis's civil rights claims fall under the policy's "wrongful act" coverage provision. (Def.'s Motion at 20.) That coverage reads as follows:

> A. Insuring Agreement
>
> We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as "damages" because of a "wrongful act" committed anywhere in the world to which this insurance applies. . . .

(PageID # 155.) "Wrongful act" is defined as "any actual or alleged error, omission or breach of duty committed by any insured." (PageID # 163.)

The POL policy's exclusions include the following:

> B. Exclusions
>
> This insurance does not apply to:
>
> 1. Any "claim", or any portion of any "claim", alleging "bodily injury", "property damage", "personal injury", "advertising injury" or "employee benefits injury".
> . . . .
> 3. Any "claim" arising out of: a. a breach of contract; or . . . .
> . . . .
> 7. Any "claim", or any portion of any "claim", seeking "damages" for emotional distress or mental anguish.
> 8. Any "claim" arising out of employment or application for employment with any insured, or any other employment related policies or practices.

(PageID # 155-56.)

Argonaut says that coverage for Ruksznis's civil rights judgment against Burgess is denied under the exclusions for claims alleging personal injury, breach of contract, emotional distress damages, or arising out of employment with any insured or any other employment-

13

related policies or practices. (Def.'s Motion at 9.) Of these four exclusions, the personal injury exclusion unambiguously denies coverage for the slander liability because the policy's definition for "personal injury" includes "defamation in any form" (PageID # 163). Ruksznis does not contest this result.

Ruksznis's claim to reach and apply the POL policy depends entirely on his civil rights judgment. With respect to the civil rights liability, the exclusion applicable to "any 'claim' arising out of employment" unambiguously applies. For reasons already discussed, Ruksznis's civil rights claims clearly arose out of the cessation or non-continuance of his "employment" with the Town of Sangerville. In the narrow context of the POL policy's employment-related exclusion Ruksznis adds the additional argument that the exclusion mentions "application for employment," which is not ordinarily understood to be how an independent contractor obtains work. (Pl.'s Surreply at 3.) That may be the case,[6] but this language does not reasonably restrict the employment related exclusion to, exclusively, claims raised by "employees."

## CONCLUSION

When Frank Ruksznis engaged in the occupation of plumbing inspector for the Town of Sangerville it amounted to "employment" as that term is ordinarily understood. Because Ruksznis's judgment against Burgess plainly arose from an employment-related dispute and the CGL policy and the POL policy both unambiguously exclude coverage for claims arising from employment-related practices, there is no coverage for Ruksznis to reach and apply in this action. Accordingly, I recommend that the Court grant Argonaut Insurance Company's Motion for

---

[6] It is not always the case. Persons interested in filling vacancies in municipal offices routinely submit an "application." I also note that Ruksznis's statement of additional facts does not include a statement that he never applied to become plumbing inspector. In any event, even if he never had to "apply," the employment-related terminology, construed in its ordinarily meaning, encompasses the employment of a municipal plumbing inspector by a town through the process of appointment to that office.

14

Summary Judgment (ECF No. 16) and deny Ruksznis's Cross-Motion for Summary Judgment (ECF No. 24).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 3, 2013